UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | | |
|---|---|---|---|
| CHRISTENA PURDY, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No.: | 3:05-CV-348 |
| | ) | | (VARLAN/SHIRLEY) |
| UNITED STATES CELLULAR CORPORATION, | ) ) | | |
| | ) | | |
| Defendant. | ) | | |

## **MEMORANDUM OPINION**

This civil action is before the Court on defendant's Motion for Summary Judgment [Doc. 29]. Plaintiff claims that defendant terminated her from her position as a customer service specialist in its Knoxville, Tennessee office in retaliation for taking leave under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, and under the Employment Retirement and Income Security Act ("ERISA"), 29 U.S.C. § 1140. [Doc. 1 at ¶¶ 8, 23.] The Court has carefully reviewed the pending motion for summary judgment, along with the supporting and opposing briefs [Docs. 30, 32, 34], in light of the entire record and controlling law. For the reasons set forth herein, defendant's motion for summary judgment will be granted.

**I.   Relevant Facts**

Plaintiff, Christena Purdy, was hired by defendant, United States Cellular Corporation, on August 22, 1996 to work as a customer service representative in its Knoxville, Tennessee office. [Doc. 1 at ¶ 9; Doc. 30 at 3.] Plaintiff was promoted to customer service specialist in February 1998. [Doc. 30 at 3.]  Plaintiff has a relatively long history of applying for and being granted FMLA and short-term disability leave by defendant, including the following:

- FMLA leave from November 12, 2001 until January 14, 2002 due to surgery plaintiff underwent to treat abnormal uterine bleeding. [Doc. 1 at ¶ 10.]

- FMLA leave from March 11, 2003 until April 3, 2003 and again from June 18, 2003 until July 2, 2003 for a respiratory impairment which "severely restricted her ability to verbally communicate." [*Id.* at ¶¶ 11, 13.]

- Short-term disability leave from April 9, 2003 until April 24, 2003 and again from May 15, 2003 until July 14, 2003 for the same respiratory condition for which plaintiff took FMLA leave in 2003. [*Id.* at ¶ 12.]

- Intermittent FMLA leave from July 1, 2004 until December 31, 2004 for "chronic sinus/respiratory issues and laryngitis." [*Id.* at ¶ 14, 15.]

During her employment with defendant, plaintiff also had a number of performance-related issues, including the following:

- Beginning on September 16, 2004, plaintiff was placed on a "Performance Improvement Plan" ("PIP") due to excessive tardiness and early departures from work from August 1, 2004 until September 15, 2004. [*Id.* at ¶ 16; Doc. 30 at 4.] When placed on this PIP, plaintiff was advised that failure to meet the expectations of the PIP could result in her termination. [Doc. 30 at 5.]

- Because of continued tardiness in December 2004, plaintiff was issued a written warning and placed on a second PIP for forty-five more days. [Doc. 1 at ¶ 17; Doc. 30 at 5.] Defendant states that this "continued tardiness could have led to [plaintiff's] termination," but notes that it was decided to warn, rather than fire, plaintiff. [Doc. 30 at 5.]

- Plaintiff was advised in January 2004 by Candi Adamick, plaintiff's immediate supervisor, that two customer complaints were lodged against her on or around December 22, 2004. [*Id.*].

On January 24, 2005, plaintiff met with Ms. Adamick and Chris Stokes, Ms. Adamick's immediate supervisor, at which point she was placed on her third PIP due to tardiness on January 4, 2005 and January 20, 2005. [Doc. 30 at 5; Doc. 32 at 2.] Also at this meeting, plaintiff was counseled regarding an incident where she appeared to be sleeping at her desk and was advised by Mr. Stokes that "her body language and attitude were displaying her unwillingness to commit to values and expectations of the Dynamic Organization," defendant's business model. [*Id.* at 6.] Plaintiff points out that this meeting occurred on the same day that she had a doctor's appointment she was attending "in order for the doctor to complete the FMLA paperwork" and implies that her poor body language and attitude during this meeting was due to the fact that "the meeting delayed her leaving work for the appointment." [Doc. 32 at 3.]

On January 26, 2005, Ms. Adamick held a follow-up meeting with plaintiff to review the expectations of the third PIP. [Doc. 30 at 6.] Also around this time, plaintiff met with Ms. Adamick for a general performance review, at which plaintiff was counseled for falling asleep during a training class and told that she needed "'to work on being positive towards all changes unless in an appropriate setting.'" [*Id.*] Then, on January 31, 2005, plaintiff was counseled for reading a book while on a customer call. [*Id.* at 7.] Subsequently, plaintiff left work early on February 2, 2005, took a personal day on February 3, 2005, and took sick time

3

on February 4 and 7, 2005. [*Id.*] Defendant notes that plaintiff did not request FMLA or short-term disability leave for any of these absences. [*Id.*] Plaintiff does not deny this.

Plaintiff was terminated on February 16, 2005 by Paul Holtzclaw, defendant's director of human resources. [Doc. 1 at ¶ 20.] According to plaintiff, his stated reasons for terminating her were that she was not "a part of our dynamic organization" and her "negativity affects our customers and coworkers alike." [*Id.*] Defendant does not deny this and states that plaintiff was terminated due to "chronic tardiness and attendance issues (unrelated to FMLA) as well as her lack of attention to [defendant's] customers." [Doc. 30 at 7.]

Plaintiff filed this lawsuit on July 12, 2005, alleging that defendant terminated her employment in retaliation for her exercise of her rights under the FMLA and ERISA. [Doc. 1 at ¶ 23.] Defendant denies those allegations and has filed the instant motion for summary judgment contending there are no disputed issues of material fact supporting any of plaintiff's claims. [Doc. 29 at ¶ 2.]

**II. Analysis**

A. <u>Standard of Review</u>

Under Fed. R. Civ. P. 56(c), summary judgment is proper if "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." The burden of establishing there is no genuine issue of

material fact lies upon the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of witnesses, and determine the truth of the matter. *Id.* at 249. Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

    B.    <u>Plaintiff's FMLA Interference Claim</u>

In her response to defendant's motion for summary judgment, plaintiff for the first time attempts to assert the claim that defendant attempted to interfere with her right to obtain FMLA benefits, thereby violating that statute. [Doc. 32 at 3.] Specifically, plaintiff claims that "[t]he Defendant's actions in interference with Plaintiff's roghts [sic] to obtain FMLA

5

benefits was a violation of the law." [*Id.*] However, in her complaint, there is no mention of interference in violation of the FMLA. Instead, plaintiff merely claims that defendant committed "retaliatory termination of Plaintiff's employment." [Doc. 1 at ¶ 8; *see also* ¶ 23.] Because the liberal pleading standards of the Federal Rules of Civil Procedure are not applicable at the summary judgment stage of a case, plaintiff is not permitted to raise this claim of interference in her response to defendant's motion for summary judgment. *Tucker v. Union of Needletrades, Indus. and Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005). To allow otherwise would violate the Federal Rules of Civil Procedure's requirement that a complaint "give the defendant fair notice of [a] claim and the supporting facts." *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 854 (6th Cir. 2001).

Because plaintiff's complaint makes no mention of a claim for interference in violation of the FMLA, defendant was not put on notice of this claim until over one year after plaintiff filed this action, during which time plaintiff was free to seek leave to amend her complaint to add such a claim. However, she did not and therefore the Court will not consider the merits of such a late-brought claim. *Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997). Accordingly, summary judgment will be entered for defendant on this claim.

    C.    <u>Plaintiff's FMLA and ERISA Retaliation Claims</u>

Plaintiff claims that she was discharged in retaliation for requesting FMLA and short-term disability leave. [Doc. 1 at ¶¶ 8, 23.] Claims for retaliation under the FMLA and ERISA are treated much like retaliation claims under other federal employment

6

discrimination statutes. The plaintiff must initially present a prima facie case by showing: (1) she availed herself of a protected right under the FMLA and/or ERISA; (2) she was adversely affected by an employment action; and (3) there was a causal connection between the exercise of the protected right and the adverse employment action. *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001); *Humphreys v. Bellaire Corp.*, 966 F.2d 1037, 1043 (6th Cir. 1992).

If the plaintiff is able to establish a prima facie case, the employer must then articulate a legitimate, nondiscriminatory reason for her termination. *DeBoer*, 2005 WL 434526 at *4. A defendant need not prove a nondiscriminatory reason for its action, but only articulate a valid rationale for it. *Hartsel vs. Keys*, 87 F.3d 795, 800 (6th Cir. 1996). A defendant articulates such a rationale when it comes forward with evidence that it fired an employee for reasons unrelated to the alleged retaliation. *Reeves v. Swift Trans. Co.*, 446 F.3d 637, 641-42 (6th Cir. 2006). Then, to withstand summary judgment, the plaintiff must show that the employer's stated reason is a pretext for unlawful retaliation. *Id*. To do so, a plaintiff must establish one of the following: "1) that the proffered reason[] had no basis in fact, 2) that the proffered reason[] did not actually motivate the action, or 3) that the proffered reason [was] insufficient to motivate the action. *Cicero v. Borg-Warner Automotive, Inc.*, 280 F.3d 579, 589 (6th Cir. 2002). Thus, a plaintiff must show "more than a dispute over the facts upon which his discharge was based." *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001).

Defendant argues that it is entitled to summary judgment because plaintiff cannot show there was a causal connection between her award of FMLA and short-term disability leave and her termination and because she cannot show that the reason for her termination was pretextual. First, as to causation, defendant argues that plaintiff has failed to establish a prima facie case for FMLA and ERISA retaliation because she has presented no evidence that Mr. Stokes and Mr. Holtzclaw, the individuals responsible for her termination, or even Ms. Adamick, her direct supervisor, were aware that she had taken FMLA or short-term disability leave at any time during her employment with defendant. [Doc. 30 at 11.] Defendant also argues that, without more, the temporal proximity between plaintiff's alleged request for FMLA leave on January 24, 2005 and her termination on February 16, 2005 does not establish a causal connection between her leave requests and her termination. [*Id.* at 11-12.] In response, plaintiff argues that the FMLA certification she received from her doctor on January 24, 2005 "confirms the inference that Plaintiff informed Stokes and Adamick" of her need to leave the meeting that took place on that day "in order to get to her doctor's offices for an FMLA-related appointment. [Doc. 32 at 6.] Plaintiff also contends that "the relatively short time period between her January 24, 2005, exercise of FMLA rights by informing Stokes and Adamick of her need to go to her physician for FMLA purposes, and her termination" establish the requisite causal connection between those two occurrences. [*Id.* at 7.]

Second, defendant argues that even if plaintiff can establish a prima facie case for FMLA retaliation, she cannot show that the reasons for her termination were pretextual.

8

[Doc. 30 at 12-13.] Defendant argues that it terminated plaintiff because she "demonstrat[ed] behaviors that were unacceptable in the Dynamic Organization in the areas of customer focus, respect and empowerment." [*Id.* at 13.] Defendant points to the numerous past incidents involving improper conduct on the part of plaintiff, including excessive tardiness and absenteeism resulting in disciplinary action in September 2004, December 2004, and January 2005, [*Id.* at 5], appearing to be asleep at her desk, reading a book while on a customer call, and falling asleep during a training class, [*Id.* at 5-6], and "failing to accept accountability for her actions or performance" when approached on January 24, 2005 about her excessive tardiness and other alleged customer service issues. [*Id.* at 6.] Defendant also notes that has had a long history of granting plaintiff's FMLA and short-term disability leave requests in the past and that plaintiff "was promoted to the tech team after she had requested and received FMLA and STD leave in 2002," thereby making it unlikely that defendant would fire plaintiff at this point for requesting FMLA and short-term disability leave. [*Id.* at 12.]

Plaintiff does not deny the specific instances of her improper conduct recounted by defendant, but instead argues that defendant has been "'nonspecific' in giving its reasons" for plaintiff's termination, [Doc. 32 at 11], and that defendant mischaracterized plaintiff's body language and attitude at the January 24, 2005 meeting. [*Id.* at 11.] Plaintiff also argues that she "had a long history of stellar work performance with the Defendant, during which she received numerous citations and accolades for her positive attitude and approach toward her work" and attempts to evidence this contention with a sworn declaration from plaintiff

9

herself, which she claims "present undisputed facts which support the fact that Plaintiff's attitude was nothing but positive in nature." [*Id.*] Ultimately, plaintiff contends, rather broadly, that "[t]he record in this case, taken as a whole, demonstrates that the Defendant maintained a discriminatory *animus* toward the Plaintiff because she took advantage of her rights under the FMLA." [*Id.*]

After carefully considering the record,[1] the Court finds that plaintiff has failed to present evidence sufficient to show that defendant's claimed reasons for her termination were pretextual. Aside from the bald contention that defendant's asserted reasons for plaintiff's termination are "'fishy and suspicious'" [Doc. 32 at 12], plaintiff has presented no evidence showing that her history of tardiness, absenteeism, and work-related behavioral problems were not the actual reasons for her termination. Rather, she simply contends that she "had a long history of stellar work performance," [*Id.* at 13] and that "a retaliatory motive can be inferred that the Defendant terminated Plaintiff's employment in retaliation for her exercize [sic] of her FMLA rights." [*Id.* at 15.] Aside from this mere speculation, plaintiff has pointed to no testimony or real evidence of discriminatory animus, and, as the Sixth Circuit has held, "mere personal belief, conjecture and speculation are insufficient to support an inference of...discrimination." *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 247 (6th Cir. 1997). Simply stated, plaintiff has not met her burden of proving by a preponderance of the evidence

---

[1]For the purposes of the pending motion for summary judgment, the Court has assumed without deciding that plaintiff has met the low threshold of establishing a prima facie case for retaliation. *See EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997). However, in so doing, the Court expresses no opinion as to the merits of those aspects of plaintiff's claims.

that defendant's articulated reasons for terminating her – namely, her absenteeism and general conduct and attitude issues – were even a =bad or objectionable reasons for termination, much less a pretext for discrimination. *See Galbraith v. N. Telecom, Inc.*, 944 F.2d 275, 280 (6th Cir. 1991) (noting that "[a] reason is legitimate for purposes of the civil rights laws if it is nondiscriminatory, even if it is mean-spirited, ill-considered, inconsistent with humane personnel policies, or otherwise objectionable."). Plaintiff therefore cannot sustain her claims for FMLA and ERISA retaliation against defendant.

Because the Court is granting defendant's motion for summary judgment on these grounds, it need not address defendant's argument that it did not violate ERISA because the benefit plan under which plaintiff took short-term disability leave is not covered by ERISA.

### III. Conclusion

For the reasons set forth herein, defendant's Motion for Summary Judgment [Doc. 29] is **GRANTED** and plaintiff's claims against defendants are dismissed with prejudice.

The Clerk is directed to enter judgment accordingly.

s/ Thomas A. Varlan  
UNITED STATES DISTRICT JUDGE